The second case of the morning is the City of Champaign v. Lisa Madigan et al. For the appellant, we have Mr. Stavens and Ms. Hall. For the athlete, Mr. Berlow and Ms. Seitz. You may proceed. May it please the court, counsel. My name is Laura Hall and I'm here arguing on behalf of the City of Champaign. There's two core issues in this case before the court. The first issue is whether a text sent or received on a council member's personal electronic device without more during a public meeting meets the definition of public record in the Freedom of Information Act. The second issue is whether a party of interest to an administrative review hearing of the Attorney General's binding opinion in a FOIA case be allowed to file a counterclaim requesting the same relief granted by the Attorney General and then petition to recover attorney's fees. When a document exists on the personal electronic device of a member of a public body, there is no statutory presumption that the document is a public record for the purposes of FOIA. And that is so because only records in the custody or possession of the public body are presumed to be public records. So what analysis do we engage in to determine whether a record which falls outside of this presumption is a public record and therefore disclosable? The statute provides us with this definition. This is a little abridged. All records, including electronic communications, pertaining to the transaction of public business, having been prepared by and for, having been or being used by, received by, in the possession of, or under the control of any public body. So a text landing in a council member's personal cell phone's inbox during a public meeting, is that a public record? So we can't presume it's a public record because it's not in custody or possession of the public body. It's in the custody and possession of the individual council member. The threshold question is, does it pertain to the transaction of public business? For instance, the text might say, I will not support your campaign for re-election if you vote to increase the sales tax. Or the council member's spouse may send a text, council member is such a jerk, I can't believe he said that about the stormwater sewer fee. So if the answer is yes, that that pertains to the transaction of public business, then we proceed to the next question. Was it prepared by or for the public body or the individual council member? Was it received by the public body or the individual council member? Is it in the possession or control of the public body or the individual council member? A lot of energy was spent trying to turn a council member into a public body. But this issue was decided by the first district in Quincy Stone. The court said, quoting, after exhaustive review, they held that an alderman was not a public body. The holding in Quinn was affirmed in the amended FOIA, which we discussed in our briefs. Also, the attorney general in her guide to FOIA, which can be found online, stated, an individual officer who is a member of a greater public body isn't, however, a separate public body. And she cites to Quinn to support this. The term public body is not susceptible to more than one interpretation. It's not ambiguous. So does the fact that this text was sent during a public meeting make any difference in this analysis? Counsel, the conundrum I have here with this whole case is that we don't know what messages were being texted between the council members. And if you had somebody approaching the council for whatever issue to deal with or talk about, and the council members are sitting there passively listening, but at the same time texting messages saying, this is an idiot idea, or this person's nuts, or whatever, at that point they're communicating with each other as they would at a council meeting, except that they're not doing it vocally. That's my concern here. And that concern, Your Honor, we would address in conjunction with the Open Meetings Act, because all deliberations have to be public. All voting has to be public. But how would we know if they're having their pre-vote discussion by text? Because we're required to do that publicly. Well, I know you're required to do it publicly, but what I'm suggesting is, what if it's not being done publicly, it's being done by text message between the various council members? And they're sitting there, you know, and they've got their little devices, which I don't use, and their thumbs are working, and we have no idea what's going on. I don't know how to answer that. We don't know necessarily what influences a council member. We don't know newspapers, magazine articles, text messages outside of the public meeting context. People can text each other. Council members can discuss public business if there's fewer than a majority of a quorum. They can discuss public business. So arguably they can discuss public business if they're not discussing it as a quorum. So you have that issue in there. But with these, I always go back to the definition of public record, because you have to show that those texts meet that criteria being used by or in the possession of the public body, and that they're of nature of records used by the public body. And my guess is that there's no record of what the texts contain. I mean, each council person would have their own device, and whatever was on their device, you have no idea what it is, right? Because there's no discovery of it. Right. That's right. I mean, philosophically, I get your argument. But this is a question that bothers me. I guess I'm way too old to appreciate the modern way of communicating. But the kids, their thumbs are working, and you have no idea what's being said. I want to ask you a question. What about the fact that the city council is actually in session and functioning as the public body, and people are receiving texts or sending texts during the meeting itself? That's where I've got a problem. Unless, going back to the statute, I realize that people balk at this analysis, because let's say you're sitting in the audience, and you're watching all this texting going on, assuming that it's happening. Can you advise your clients to stop it? Or pass a rule saying no communication devices during a council meeting? Yes, you can. But is it a public record, and that's what we're here to decide today. Well, the issue is to me, and I think Quinn decided, an individual council member is not a public body. Correct. And I think the Attorney General agrees with that portion. Well, you said she had something on the website, didn't she? She did, but that was not what was argued in her briefs. Okay, right. But let's say this, though. So an individual council member isn't equivalent to a public body, but when the individual council members come together in a public meeting to function as the city council, isn't that a different situation than looking at their personal phone records when they're at home talking about business? I think that's the distinguishing thing for me in this case. I don't think the statute provides for that. Well, that's the other thing. I mean, when the AG's office gets up to argue, isn't this a legislative matter? I mean, the flip side, doesn't the legislature need to, if they think this is important and it should be covered, shouldn't they make the statute clear about that? I would agree with that statement, yes. I think the way it's written, when I review FOIA, I review a lot of FOIA requests. I sit with the statute. Some is obvious. Ordinances, I mean, all the obvious stuff that the amicus brief listed and the statute list, that's not a problem. When it's in our control and possession, now you have to go to another layer of analysis because we don't have it. That was our original argument, was that we don't have these. We don't have possession of them. We don't have control over them. We can't force the council member to give us their text messages. We have no mechanism to do that because they can say no. But in this case, they actually did give you some of them. Yes, they did. A couple did. Consent.  But through, this was my predecessor, but through thinking through the statute, maybe these aren't text messages and let's think about this, which is why we're here now. But because we can't presume anything not in our control or possession is a text message, you have to kind of go a step further to analyze, okay, maybe this is a public record. But we have to complete the analysis. And I argue that analysis is the five criteria I listed. It has to be, I called it a nexus. Well, received by a public body. So if you're sitting in the city council meeting, functioning as the city council, I mean, when else would it be received by? I say it's received by the individual council member who may have a personal interest in it, but it doesn't mean it's the public bodies. Now, sometimes as with traditional letters or communication, it will be read at the council meeting. Some cities have a time when they get correspondence and they read it, send it into the record. But just reading it and then there it sits. It's in your inbox. You've not shared it with anyone. It's just your deal. And it doesn't then make a public record. If they cited it, you know, I just got a text message from so-and-so who says the stormwater sewer fee will ruin the city of Champaign, no more taxes. They're really opposed to it. Now it's part of the public body's record. And that would be releasable. That would be then something we would gather with the other records. And I, because I don't think it's, part of this is this idea that Justice Appleton said, is what if there's all this nefarious illegal activity going on that council members are really saying one thing, talking about one thing, but really they're texting something quite different. You know, that is something I don't think the FOIA statute addresses. I don't think this definition addresses except to combine the Open Meetings Act with the FOIA because they should be interpreted together. And with electronic communications, you know, it certainly created this difficult situation that we find ourselves in. So I think that, you know, to say that these texts, you know, agendas are set way in advance. So everyone knows what's being discussed. Everyone is prepared ahead of time. The documents are produced. So to say that some random text message during the council meeting would have some kind of disproportionate influence on the council member or their vote, because that is what the Attorney General said in her opinion, was that it's very likely that city council members receive communications that aid in the elected official's formulation of opinions that consequently affect their vote. And I don't think that's what FOIA is designed to deal with because what doesn't affect a council member's opinion? Many things do. This would just be one of many. So it's very speculative or attenuated to say that some random text would have this far-reaching effect on a council member. And I think that, you know, I ask, is it really as simple as I'm putting forth? And I know that we grapple with this. I can see that. I can see it in your faces. But I'm arguing that it is because what gives pause to the Attorney General and perhaps to others is this mistaken idea that FOIA is concerned with the workings of the council member's mind, how they think and vote. And council members do voice their opinions publicly. They vote publicly. You know, that's an open meetings issue. You know, the Freedom of Information Act is concerned with the affairs of government and the official acts and policies of those who represent them. And they use the word official acts and policies, not just acts and policies. You know, that has meaning because official acts occur when there's a majority of the court. You know, a single council member cannot commit the city. Back to what Justice Pope was indicating, does the analysis change when one city council member receives a text and forwards it to the majority of the other council members? Does that change the analysis? Without more, I don't think it does. If they just read it and then it's out in the inbox. These are issues we grapple with. And I think they're valid and real. But I'm thinking that the way it's written and what is a public record is the position of the city of Champaign. Because not only that, we wouldn't necessarily know either that they did that. I'm the FOIA officer. And I say, I know you're up to no good, you know, hand over your emails. And they say no. Then what do we do? Do we have control? How do we get them? Do we have to sue our own council members? So I think that's a problem. I think that runs into that question of how do we as the public body access private emails if we don't, if no one knows it's happening but the council members. So I think that's the problem we get into with that. You know, and it's, sorry, did you have a question? No. Okay. You know, texting council members during a public meeting is boorish and it creates a very negative impression and it's profoundly disrespectful to other council members and to the citizens participating in the meeting. But a text sent to or from a council member or a constituent, there's no nexus with the public body. It's not meeting that criteria. And it's not a public record as defined by FOIA. If you don't have any further questions, I'll. The second issue involves the filing of the counterclaim and the petition for attorney's fees by the News Gazette, which kind of turned this proceeding on its head. The News Gazette got what they wanted through the Attorney General, and yet they're proceeding as if the Attorney General did nothing under the statute to further their case. By allowing the counterclaim and the injunction to issue, essentially they're creating two parallel causes of action asking for the same relief. And this is not the intent of FOIA. It's too late to file a claim for injunctive relief after the Attorney General issues her binding opinion, particularly in this case because the PAC opinion agreed with the requesters. They stated, the Attorney General stated, the city is directed to take immediate and appropriate action to comply with this opinion by furnishing copies of the records to Mr. Wade. The statute is specific. If an aggrieved party chooses to proceed pursuant to Section 11, that's filed lawsuit, in this case it would have been Champaign County, the Attorney General withdraws from the case. And after the binding opinion is issued, the aggrieved party may proceed in administrative review, which is what the city did. And the Attorney General is empowered to enforce her own opinions. Attorney's fees are not provided for in Section 9.5 of the Freedom of Information Act, and the statute does not provide for attorney's fees in administrative review. Section 9.5 provides a cost-free appeal process for requesters. Prior to the 2009 amendment, the only appeal of a denial by the public body was to the head of the public body. And if you didn't get satisfaction there, then you could file a lawsuit for injunction. The 2009 amendment repealed that section and replaced it with Section 9.5, which is a review by the PAC, and added Section 11.5, which provided for administrative review of a binding opinion. This section does not provide for attorney's fees. If the News-Gazette did not have confidence that the PAC could enforce its own opinion, they could have filed for injunctive relief in the Circuit Court of Champaign County pursuant to Section 11. Up until the time the HE issued her binding opinion, this is how the statute is written. If they prevailed, they would have been awarded attorney's fees. Another troubling aspect of the counterclaim attorney fee issue is that the News-Gazette sought an order compelling the city to release the requested records after the court affirms the PAC's administrative decision. This is troubling because the standard of review is more deferential in administrative review than if they filed a lawsuit in the Circuit Court, which requires de novo review. And then they get to claim attorney's fees on top of that. In response to Judge Schmidt's question, in the July hearing, can't the HE enforce her own decision, the News-Gazette replied, in the absence of the counterclaim, there would be no enforcement mechanism, and the purpose of our counterclaim is to require the production and have them ordered to that effect, and that is just wrong. I don't know of any city who refused to release records after a binding opinion from the HE. While intimating that there were cities thumbing their nose at a court order to release records, the News-Gazette did not cite any. The News-Gazette is not the prevailing party contemplated by Section 11. The affidavit submitted by the News-Gazette was for work in preparation for administrative review hearing, and because the statute does not provide for attorney's fees, all parties must bear their own costs. Thank you. You'll have additional time on rebuttal. Mr. Berlow? Have you and Ms. Seitz divided your time? We have, Your Honor. Thank you. You may proceed. Thank you, Justice Anderson, and may it please the Court. My name is Cliff Berlow. I'm an assistant attorney general, and I'm here on behalf of the Office of the Attorney General. The city is asking this Court to adopt a per se rule that would make the Freedom of Information Act almost entirely obsolete. Under the city's approach, the roadmap for evading disclosure under FOIA is exceedingly simple. A public body need only instruct all of its members, all of its employees, to conduct public business using their personal electronic devices and their personal e-mail accounts, and the documents they create need never see the light of day. Isn't the issue that the statute needs to be amended? Because, you know, when I looked at some of the statutory history and the discussions on the floor of the Senate, they were concerned about the fact that personal devices might be able to be gotten at, and they were assuring people that that was not the case, that this statute did not apply to electronic communications on personal devices of city council members in particular. Justice Pope, I think I have two responses to your question. The first is that, as a general matter, if we're in the circumstance of discussing legislative history to interpret the statute, we are essentially conceding that the statute is ambiguous, in which case the Attorney General's opinion is owed substantial deference by the Court and can only be overturned if unreasonable or essentially irrational. And so this legislative history evidence would have to be so compelling so as to essentially demonstrate that the Attorney General has acted unreasonably here. My second response to that is that, while I take your point that there was some discussion in the legislative history about personal electronic devices, the argument here that the city is really offering is one that I think flies in the face of what the ordinary meaning of a public body would be. We are talking, as you pointed out, about individuals sitting in the front of a room during a formally convened meeting acting in their formal official capacities as representatives and members of a public body. They are an instrument of the government. They are taking actions to further the interests of the government. And so when they are acting in that capacity, they are plainly a part of a public body. The analogy that we are asking the Court to draw here, or the analysis I should say, is the same analysis that the federal courts have adopted for more than 40 years. Unlike the Illinois equivalent, there is no federal statutory exception for contractors, organizations that contract with the government to perform government functions on behalf of the government. And what the federal courts have said is that because those entities are essentially performing the acts of government, they are performing the actions of government, they are in a sense an instrument of the government, that they are therefore a part of the government for purposes of the Freedom of Information Act. Now, the Illinois statute includes Section 7-2, which makes contractors a part of the government for purposes of FOIA. It would be strange indeed to say that in a completely private entity who has contracted to perform certain functions for the government is considered a part of the government for purposes of FOIA, but that the actual individuals who are representatives of the public, of the people, and who sit on a public board are not. Is there similar language asked to those people who sit on boards and things of that nature? No, Justice White, and there doesn't need to be. And there doesn't need to be for the two reasons that I think I've articulated. The first is, from a formal perspective, we're talking about individuals acting in their official capacity on government business to further the interests of the government. And from a purely practical and pragmatic point of view, it is difficult to see how you can draw a line between the individuals who act on behalf of the government from the government itself. Under the city's argument, if an individual were to send a complaint about something to the head of the Streets and Sanitation Department at their home address, that document, and that individual put it in their briefcase, carried it back to work every day, read it, reminded them that they needed to address this, that document would not be a public record. According to the city, that document would inherently be a private document simply by virtue of the fact that it was sent to the head of the department's home address. That is not the law. That is not the law that the General Assembly identified. And if you go back to the Canon of Construction, Section 1, the statute is to be construed in favor of disclosure. The appropriate methodology here is to interpret this threshold determination, whether a document is a public record, in a way that advances the values and the purposes of the statute. Now to be sure, that definition will screen out some material, and it will be that material which is genuinely private, which does not bear upon government work. But there's nothing either in the statute, either in the legislative history, or in the structure of the law to suggest that this definition is meant to screen out a lot of material. What is clear is that the General Assembly envisioned that most of the work here was to be done by the Section 7 exemptions, the individualized exemptions, and that it is the burden of the public body to review documents individually, case-by-case, or if you'd rather, document-by-document basis. What about Ms. Hall's argument that they have no control over the individual city council members? How do they get them to make them turn over their cell phone, text messaging?  The statute sets up five possibilities. That a document was either prepared by or for, used by a public body, received by a public body, or in the possession or control of a public body. So to accept that argument is to elevate those last two elements above the other three. Clearly the statute envisions that there will be responsive documents that are not in the possession or control of the city. And so it seems to me that if you're going to give in the ordinary principles of statutory construction and to treat those verbs as co-equals, it can't be the case that possession or control is simply dispositive. What the city has asked the court to do is take the presumption in Section 1.2, which says that if it is in the possession or control of the government, then it is presumed to be disclosable, and made that a requirement and said that if it's not presumed, it never is. It seems to me you just undercut your argument. If you've got, I don't know how many members there are in the Champaign City Council, I'll pick a number and say seven. If you've got seven people on the council and they each have their machines, and four of them are talking with each other, that's a majority. If they're talking with each other over the machine, and you're saying the city has no control over that, how is the city liable? Well, control means one of two things, I suppose, and I'm using that term perhaps a little bit loosely. Control in the sense that I was using it was physically in possession of the document, and so perhaps I went a little far with control. Well, and also with document, because we're talking about text messages. Well, a text message is an electronic document by any standard. Again, I'm old. It is an electronic record. It would be in any form of civil discovery, and every corporation in America will tell you that these are perfectly reasonable, viable records. To go to your point, the question is whether or not possession is the be-all, end-all. I see that my time is running short, so I want to get to what I think is critical here. The consequence, if the city is right, is that FOIA is meaningless. FOIA, given how ubiquitous modern technology is, there is simply no way to obtain documents. If I'm right, however, the only consequence is the city will do exactly what it is that Alaska did in light of the Sarah Palin case that we cited in our brief. They will adopt a policy which says that all public business is to be conducted using publicly created email accounts and publicly owned electronic devices. If you fail to do that, you are in violation of the policy and subject to discipline. The worst case scenario is to create a policy that prohibits this, as both Justice Appleton and Justice Pope pointed out. But Mr. Perlow, I ask you again, if the city is correct, isn't the answer that the legislature needs to fix this? Justice Pope, I imagine that that is certainly a possibility. Because the legislature determines the policy. That's their job. But that presupposes that the term public body does not incorporate the individual members of the public body. That the members are not a part of that institution. What about the Quinn case? Because you haven't discussed that. The Quinn case, if I can briefly address it. The Quinn case is a case about standing. It is about procedure rather than substance. The Quinn case is fundamentally about who is amenable to suit under FOIA. And what that case deals with is whether an individual member of a public body, under the old regime where only the head of the public body or the institution can be sued, whether that individual can be proceeded against directly in court rather than against the institution. And to take that language out of the context of discussing standing,  No, I guess you're out of time. Go ahead. May it please the court, my name is Esther Seitz and I'm here on behalf of the Champaign News-Gazette and its reporter, Patrick Wade. The question of whether text messages concerning city business sent, received and used by city council members during city council meetings are public record subject to the FOIA comes to this court on administrative review. And that is very important. Therefore, it is also crucial that on this administrative record, the city did actually concede that it has the requested record. In fact, there's no question that the city council members provided records to the city when the city asked for those records. And in turn, the city then provided some of them to the PAC. And those records should be in the court case of this file, although they have not been accessible to the News-Gazette. What's also significant is the limited scope of my client's request. In the limited scope of the PAC opinion, it is very clear that both apply only to records that actually pertain to city business, the legislative function of the city. How would you know? I mean, you say, okay, council members, copy off all the text messages you created regarding city business that you sent to each other. And you'll just have to trust us that we didn't copy off the real stinker that was in there. Well, the PAC opinion does only apply to records concerning governmental affairs. And that is because that's what my client, Patrick White, specifically requested. My question is, how would you know? You'd have to trust the city at that point, right? That's absolutely true. And I think that is inherent in most FOIA cases. We trust the public body to produce the responsive records, because we don't have access to those records. We never get to see what is being withheld. Do you agree that the holding the AG's opinion is also limited to communications that occur during an actual city council meeting? That's right. City council meetings and their study sessions. Right, study sessions, too. But other than that, would you agree that an individual council member's personal cell phone, text messaging, and email, even if it related to city business, if it was not received or sent during a city council meeting, would not be subject to FOIA? That's absolutely right, because this is an administrative review, and we're looking simply at the question before the PAC, and then obviously before the trial court, and now before you. And this case arose out of a very limited FOIA request. And like you said, that FOIA request only asked for text messages sent and received during city council meetings or at the study sessions. Okay. Maybe you misunderstood my question. I understand that the decision was limited to that. My question to you is, do you have an opinion about whether or not FOIA would apply to personal cell phone text messaging of city council members not conducted during a city council meeting? That question is simply not raised by this appeal. I understand that. And I don't have an opinion on it. Okay. The past determination that the requested records are public records is not clearly erroneous, and that is the standard review here, because the text messages were sent, received, and used by public officials during those public officials' work times, and they concern public business. Okay. Why isn't the standard of review de novo? Because this is strictly a statutory interpretation, isn't it? Because it comes to this court on administrative review, and it is not simply a matter of statutory construction. The PAC was charged with deciding a mixed question of law and fact. What's the question of fact they have to decide? The question of fact was that the PAC received, one, it had to construe the extent of my client's FOIA request, and secondly, and this is probably more important, it had to look at the text messages that were forwarded by the city to the AG's office and examine whether or not those messages fell within the parameters of the statutory definition of public records. But that's not the essential nature of the AG's opinion. The AG's opinion is a general opinion that under the FOIA statute, messages and things done electronically during a city council meeting by individual council members is covered by the FOIA statute. To me, that's a pure question of law. We would disagree because there is a factional analysis that was required to be undertaken by the PAC in simply receiving, reviewing the text messages and seeing... Is there discussion in the opinion about what the text messages actually are? Yes, there is. It is admittedly limited, mostly focusing on the fact that the News Gazette has no right to access the private portions of those messages. And there apparently were some messages that were at least in part concerning private affairs, and those were not covered. So it's clear that the PAC undertook an analysis that actually, because of the factual nature of the text messages, weeded out some of those text messages as not being subject to FOIA. We don't have a right to those portions of the text messages. It's under the PAC opinion, and we're simply asking this court to affirm. I would agree with you on the clearly erroneous standard. If we had a particular text message, the AG determined that that text message related to city business and therefore was discoverable. We're assuming that these text messages relate to city business, and then we're applying the statute to them. That to me is a clear question of law. Your Honor, I believe those text messages are in the record. It doesn't matter. The fact that they're in the record doesn't matter, because we're going to assume for purposes of this analysis, and I don't see in the AG's opinion where she discusses particular messages, basically says for purposes of this appeal, the city concedes there were electronic communications that would be responsive to the request if they were required to be produced. That's right. And then later on in the opinion, she goes on to describe. Who cares? She can describe whatever she wants, but that's not the issue before us. The issue before us isn't does this text message fit within FOIA. The issue is does an electronic communication by a city council member during a city council meeting, is it subject to FOIA? That's a question of law. To me, now you've not convinced me yet on this clearly erroneous standard. Maybe you want to go on to another argument, but to me we don't care what the text messages are factually, because there's a concession. There is a concession, but there was also an examination of specific text messages that should be in this record. But why is that relevant to us on this issue? Because this issue. We don't care what the messages were. We're interested in the law. Does the law require these business-related texts to be turned over? It's a statutory interpretation to me. It certainly involves analyzing a question of law, but it's our position that there's also a requirement for the PAC to have analyzed as it did the actual text messages at issue here. What is also a part of this appeal is the city's appeal on our counterclaim. We filed a counterclaim. We moved for Lee to file that counterclaim, and that motion was granted. The order sought two things. It sought that the records be released. It sought an order stating that they are subject to FOIA, and it also requested attorney's fees. Was that filed after the AG issued their opinion? We filed the counterclaim in the circuit court. That is correct. And the city is incorrect in claiming that we are looking to recover fees under the Section 9.5 administrative process. None of our attorney's fees actually relate to the administrative process. We're only looking to recover fees for attorney's fees that were incurred before the circuit court. All of the attorney's fees were actually incurred in connection with litigation. We're not looking to recover fees that were incurred as part of the administrative process before the PAC. So Section 9.5, the city is saying that it's telling that we don't discuss it. We don't discuss it because we are not seeking fees incurred in connection with that process. We're only seeking fees in connection with the litigation. And the FOIA's fee-shifting provision is a mandatory one. It says that fees shall be awarded. There's really no discretion to the trial court. And it says that all that requester has to do is prevail. And News-Gazette clearly prevailed. Now the case law and the legislative debates are clear that... Your white light's on. Okay. I will wrap it up then. Thank you. Thank you. Thank you. That's all. I want to state first of all that what's not at issue in this case is the device the message is sent on, whether it's on a personal cell phone, whether it's in a briefcase. You could have the tax levy in someone's briefcase. It's still a public record because it's used by the public body. So I think that's a mischaracterization of our argument because we don't exclude the idea that you could have a public record on a personal cell phone under certain circumstances. And it's certainly true that a public body consists of its members, but I don't think that the individual member is ever a public body. The binding opinion also was a blanket disclosure on all messages received during a public meeting. And this is what's on appeal. They didn't really discuss gradations of texting between one member and a constituent or two members or all the members secretly. It's just all text messaging during the public meeting. And I think it's important, and it speaks to the issues you've raised, that if that's going on, then that's really an open meetings issue because deliberations have to be public. And if there's a suspicion that that is not going on, then there's enforcement proceedings through the state's attorney's office or the attorney general. There is a way to deal with that, and they can subpoena records if they suspect, I imagine there would have to be a standard, if they suspect that texting is going on, the state's attorney could subpoena those records for that reason. So I think there are, it does get messed up, it gets confused, but there are, we act like the Open Meetings Act is this other thing, but there are ways to enforce it, and they work together. And because these are texts, the tendency is to put it into this little silo of text messages, when in fact it's moving into Open Meetings Act violations, and I think that's what we're grappling with. So you know, the difference is, you know, that same, you know, is it content driven, so that same text message sent five minutes before the meeting started, they look at it and go, ooh, storm water, sewage fee, whatever. You know, close it up, the meeting starts, does that affect their vote? But if they opened it up five after seven, the meeting, ooh, something else. Does it become a public record if that's all there is there? You know, I say, no, it doesn't. I just, it's not used by the public body. And part of this is relying on the public body to do the right thing. The records are requested, we gather them from where we gather them from, we review them, we release them, we discuss with the AG if we have issues, that happens all the time. They call us up, really, are you kidding me? You know, oh yeah, you're right, they should have released that. I mean, that happens, that kind of thing happens all the time. But I, we can't force the council members in the scenarios you've raised to release records if we don't know they exist. We can't make them do that. And I think that's what stops the analysis that we have some kind of control, because consent is not control. Consent is good, but it's not. It's the public body having control over those records. Thank you. Thank you, council. I take this matter under advisement and stand in recess until.